GRAY LINE, Inc., et al. v. GREAT AMERI-
CAN INDEMNITY CO.

Civ. A. No. 8636.

United States District Court
D. Massachusetts.

Dec. 23, 1949.

Nutter, McClennen & Fish, Arthur E.
Whittemore, Boston, Mass., Barrett Elkins,
Boston, Mass., James M. Hoy, Boston,
Mass., for plaintiff.

Goulston & Storrs, Herbert B. Ehrmann,
Boston, Mass., for Elsa H. Jacobs.

Richard S. Bowers, Boston, Mass., for
Sidney C. Burgoyne, Jr., Acree Futrell,
Lillian E. Taylor and Phyllis Taylor.

S. P. Sears, Boston, Mass., for defend-
ant.

FORD, District Judge.

This is an action for a declaratory judg-
ment brought by the Gray Line, Inc., a
Massachusetts corporation, and Thomas J.
Butler, a resident of Massachusetts, against
the Great American Indemnity Company,
a New York corporation. Plaintiffs seek a
determination of the obligation of defend-
ant under a liability insurance policy issued
by defendant as to claims and suits arising
out of an automobile accident on August
19, 1948. Persons who were injured in
that accident and who now have suits pend-
ing either in this court or in the Massachu-
setts Superior Court against the plaintiffs
here have been permitted to intervene as
plaintiffs in this action.

The facts, which for the most part were
agreed upon by the parties, are as follows:
Plaintiff corporation's business consists
chiefly in conducting sightseeing tours in
buses and other motor vehicles, and in rent-
ing such vehicles for charter hire. It was
the owner and the plaintiff Butler, its em-
ployee, was the driver of a Cadillac sedan
involved in an accident on August 19, 1948.
This sedan was used by the owner at times
as a sightseeing automobile and at times
rented for charter hire. At the time of the
accident it was being used to carry sightsee-
ing passengers in the course of the owner's
sightseeing business.

A Standard Automobile Liability Policy
No. X546891 was issued by defendant to
the plaintiff corporation, as one of the insur-

ed named therein, covering liability of the insured for damages for bodily injury, including death, and for injury to or destruction of property caused by accident and arising out of the maintenance and use of the automobiles covered by the policy. By Endorsement General 14028 attached to the policy it was provided that, "The Insurance applies to all licensed automobiles owned by the named insured at any time during the policy period and used for the purposes stated in the declarations, * * * ." Item 5 of the declarations of the policy states the purposes as "Carrying passengers and their baggage in connection with Insured's business described in Item #1." Item No. 1 describes the business of the insured as "Sightseeing Tours, Chartered Buses, and School Busses Principally." Included in the policy was a provision for cancellation of the policy by either party upon the giving of certain written notice to the other party. The policy was for the year 1948 and was in effect at the time of the accident. It had an endorsement amending the policy to assure compliance with Section 6 of Chapter 159A of the General Law of Massachusetts (applicable to the charter hire portion of the insured's business), and except for this endorsement was in all material respects the same as the policies previously issued to the plaintiff corporation by defendant for the years 1945, 1946, and 1947.

Plaintiff corporation had applied to the Massachusetts Registry of Motor Vehicles for a certificate of registration for the Cadillac sedan involved here, and such a certificate had been issued for the year 1948. The sedan had been licensed as a sightseeing vehicle for the year 1948 by the Police Commissioner of the City of Boston. Ch. 399, Sec. 3, Mass. Acts and Resolves of 1931, The Massachusetts Department of Public Utilities had issued to The Gray Line, Inc., a Certificate of Public Convenience and Necessity under which, as it had been subsequently amended by the same department, the plaintiff corporation was permitted to operate not exceeding twenty-eight sightseeing vehicles in and from Boston, and in other named municipalities. The trip on which the sedan was being used at the time of the accident was along a route listed in said certificate. At no time in 1948 did the number of vehicles used by The Gray Line. Inc., in its sightseeing business exceed the number permitted by said certificate. Plaintiff corporation had never given any notice to the department that this particular sedan was used in its sightseeing business, nor had the sedan ever been inspected by the Inspection Division of the department. In actual practice the department did not require the listing or inspection of sedans used for sightseeing purposes.

The determination of defendant's obligations under the policy with respect to the accident in which this Cadillac sedan was involved depends upon a determination as to whether this sedan was "licensed" within the meaning of the policy. Plaintiff's view is that in order for a vehicle to be licensed within the meaning of the policy it is at most required that the vehicle should have every license (including any certificate in the nature of a license) which was required by law for it to engage in the particular service in which it was engaged at the time of the accident. Under such a definition the vehicle was clearly licensed. The registration certificate required by Mass. G.L. Ch. 90 had been issued. No certificate of insurance had been filed under said Ch. 90, but the vehicle was excepted from this requirement by Sec. 1A of said Ch. 90 since it was owned by a corporation subject to the regulation of the Department of Public Utilities both as an operator of sightseeing vehicles under Massachusetts Acts of 1931, Ch. 399, and as an operator of vehicles for charter hire under Mass. G.L. Ch. 159A, Sec. 9. The certificate of public convenience and necessity required by said Ch. 399 of the Acts of 1931 had been issued to the owner of the vehicle, as well as the license of the Boston Police Commissioner required by the same chapter.

■ Defendant argues that this particular sedan had never been individually listed with the Department of Public Utilities, no specific permission had ever been given by that department to operate it, and it had never been inspected by the department. It claims that these facts constitute violations of the rules of the department for sightseeing vehicles, and that, therefore, the sedan

at the time of the accident was not licensed to operate. It further contends that since this policy contains a provision for cancellation without notice to the department, it does not conform to these rules and that since no policy conforming to the rules had been issued, the sedan was not licensed.

These contentions cannot be accepted. In the first place, the rules of the department on which defendant relies contain the following provision: "48. *Application of Rules and Regulations.* The foregoing rules and regulations for the operation of motor busses are for general application and are subject to such changes and modifications as the Department may, from time to time, deem advisable, and they are also subject to such exceptions as the Department may consider just and reasonable in individual cases." No requirement of any particular formality in the making of an exception is set forth. The department in actual practice did not require the listing or the inspection of individual sightseeing vehicles of the sedan type. Nothing in the statutes or rules requires the giving of any specific permission to operate individual vehicles. And there was no evidence that the department ever objected to the sufficiency of the 1948 policy, or of the similar 1945, 1946, and 1947 policies which contained like cancellation provisions. In such circumstances, it must be held that so far as the defendant has pointed out any departure from the general rules by the plaintiff corporation, the department has excepted it from compliance.

Moreover, even if no exception had been made and it were found that the Gray Line, Inc., had violated the rules and regulations of the department in all respects complained of by the defendant, this would not deprive the vehicle of its status as a licensed automobile. It cannot be held as a general proposition that any violation by a licensee of the rules and regulations imposed by a licensing authority automatically renders the license null and void. Certainly no such effect was intended by the rule making authority here. Rule 49 of the department in regard to the operation of sightseeing automobiles provides: "*Penalty.* The violation of any of the foregoing rules shall be cause for the revocation of the certificate issued by the Department." This clearly presupposes that the license granted by the certificate remains in force in spite of violations of the rules until such time as the penalty of revocation is imposed.

This policy was clearly intended to furnish the liability insurance required by law or regulation for the protection of the insured's passengers and the general public, and it should be interpreted so as to effectuate the purpose of such requirement. This it will not do if it is interpreted so as not to apply to any automobile with respect to which some law or regulation has been violated. Such laws and regulations are intended in many cases to prevent accidents and very often the act which constitutes the violation is the cause of the resulting injury. Such violations are a substantial element of the risk which the insurer contracts to assume, and not a ground for escaping from its obligation.

Moreover, the interpretation of the word "licensed" as used in the endorsement attached to this policy should be consistent with the other terms and purposes of the policy. It is clear from the declarations of the policy that it was intended to cover the sightseeing vehicles of the insured. The word "licensed" cannot have been intended to have a meaning which would prevent the insurance from applying to any of those sightseeing vehicles. But that would be the result of accepting defendant's interpretation of the word "licensed" and defendant's argument based on the cancellation provisions of the policy for that argument applies with equal force to every sightseeing vehicle which the policy purports to insure.

Consequently, I conclude that the plaintiff corporation's Cadillac sedan involved in the accident of August 19, 1948 was on that date a licensed automobile within the meaning of paragraph 1 of Endorsement General 14028 attached to policy No. X54-6891 issued by defendant and in effect on that date; that the claims of the intervening plaintiffs in this action for damages arising out of said accident are within the coverage provided by Part I of the Insuring Agreements of said policy; and that the

obligations of defendant under Part II of said Insuring Agreements, as to defense, settlement, and supplementary payments are applicable with respect to said claims and suits brought to enforce them.

Judgment in accordance with this opinion.